UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **CHARLES J. HAWKINS** | **CIVIL ACTION NO. 3:11-cv-1325** |
|     LA. DOC #935346 | |
| VS. | **SECTION P** |
| | **JUDGE ROBERT G. JAMES** |
| **BILLY HARRISON, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

*Pro se* plaintiff Charles J. Hawkins, proceeding *in forma pauperis*, filed a series of complaints, amended complaints, and motions pursuant to the provisions of 42 U.S.C. §1983. Plaintiff is an inmate in the custody of the Louisiana Department of Public Safety and Corrections (LDOC); he is incarcerated at the Morehouse Parish Jail (MPJ), Bastrop, Louisiana. Plaintiff complains that he is being denied prompt and appropriate medical care and he prays for an order directing the defendants to provide appropriate care. Initially, plaintiff sued MPJ Warden Billy Harrison, Morehouse Parish Sheriff Mike Tubbs, Nurses Janeen Streeter and Alice Hawkins, and Dr. Michael Smith; thereafter, he named various other corrections officers and officials at MPJ and in West Carroll Parish where he was incarcerated prior to his transfer to MPJ.

     These pleadings have been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint and associated motions seeking injunctive relief be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

*Background*

*1. Original Complaint [Doc. 1]*

Plaintiff claims to have Hepatitis-C and an otherwise unspecified "liver condition." On some unspecified date Dr. Smith ordered "blood work." Nurses Streeter and Hawkins drew the blood but failed to "follow through with the orders." Warden Harrison advised that plaintiff "cost them [too] much money and he's not taking [plaintiff] to a hospital..." He verbally threatened plaintiff and told him to go home, but of course, plaintiff is unable to leave the prison. According to plaintiff, "[t]hey discriminate against black and white here and also against people from different parishes." Plaintiff faults Dr. Smith because Smith knows that plaintiff needs to be examined by a "specialist"; however, he "doesn't push the issue." Plaintiff complains that he also needs to be examined by an orthopedic specialist for a cyst that needs to be removed, and, that he has been charged for a dental procedure and medication he did not receive. He alleged that he has been "passing blood," with each bowel movement; that the defendants are aware of that fact, but will not refer him to the hospital. Plaintiff also alleged that he had a sinus infection, that he requested antibiotics, and that Nurse Streeter refused the medication because plaintiff was not febrile, although, he was expelling green mucus and experiencing constant nose bleeds.

He prayed that the Court, "[m]ake these people give me proper medical care and treatment and take me to [a] liver specialist also take me to orthopedics" and "place a restraining order against them to stop retaliation."

*2. Request [Doc. 8]*

On October 21, 2011, plaintiff requested trial by jury and a copy of the local court rules. He claimed that he was being denied access to the law library and requested a restraining order on

2

Warden Harrison and his staff "for retaliation and interfering with Federal Case."

### 3. Grievance [Doc. 13]

On October 26, 2011, plaintiff submitted for filing a copy of an inmate grievance dated October 24, 2011. In that grievance plaintiff complained that he was charged three times "for the same ailment of sinus infection and still haven't gotten over it yet." He also complained that he was not treated for some unspecified problem with his wrist, ostensibly the cyst he mentioned in his original complaint. When he complained, Warden Harrison advised him that the problem was minor; he also threatened to "go to the court and ask that [plaintiff] get some extra time." He also called plaintiff "stupid" and told him that he had no rights in his jail; he also advised that he was not required to answer plaintiff's grievances. Plaintiff concluded his grievance, "I'm sending this to the Courts so you can have him answer."

### 4. Motion for Preliminary Injunction [Doc. 14]

On November 1, 2011, plaintiff filed a "Motion for Memorandum Order" seeking "an injunction and restraining order against Billy Harrison et al. and staff at Morehouse Parish Jail for any form of retaliation or tampering with mail such as holding plaintiff's mail."

### 5. Amended Complaint [Doc. 15]

On December 6, 2011, plaintiff filed an amended complaint entitled "Motion for Additional Parties" seeking thereby to join as defendants Sheriff Jerry Philley and Louie Cleveland of the West Carroll Parish Sheriff Department as defendants.

### 6. Motion for Restraining Order and Preliminary Injunction; Memorandum [Docs. 16-17]

On the same date plaintiff filed a Motion for Restraining Order claiming "Billy Harrison and staff at Morehouse Parish Jail has constantly and intentionally harassed and retaliated against

plaintiff due to litigation being filed asking for proper medical care and treatment due to him."

In the supporting memorandum he alleged the following:

1. Billy Harrison made verbal threats of physical violence and bodily harm, along with slanderous accusations about plaintiff's character. Harrison has also attempted to have plaintiff committed at to the mental ward at the hospital and he has also attempted to have plaintiff placed on mental health medication. Harrison "has presented himself as a doctor and denied [plaintiff] medical care." Harrison also placed plaintiff on disciplinary lock down where he is deprived of his mattress for 18 hours/day and was allowed only four showers in 25 days. Plaintiff also complained of unsanitary conditions in the lock down cell, cold food, and, unsanitary trays. Harrison permits inmates "to handle incoming and outgoing mail" and he refuses to answer ARPs. Harrison threatened him with sodomy and "homosexual violence." He concluded by alleging that he is denied a "legal call" and access to the law library.

2. Nurse Streeter "lied about [plaintiff's] condition" and "made false accusations about [him] to E.A. Conway [Hospital]..." She "lied about appointments [and] she has given [him] wrong medications knowing they wouldn't help." She overcharged him for services and has talked about his medical condition with non-medical prison staff. She physically threatened him and tried to have him committed to a mental ward under false pretenses. She cursed him and called him slanderous names and refused to refer him to see a physician or go to the hospital, except for mental health reasons.

3. Corporal Williams "harassed [him] and treated [him] with racial indifference." She threatened him with disciplinary lock down. She made him sleep on the floor notwithstanding plaintiff's "back problems and other physical handicaps..." She refused to allow plaintiff to sign for

4

his medication in an effort to make it appear that he refused the medication. She has also said "she hope I would die and other derogatory statements."

4. Officer Streeter (the son of Nurse Streeter), "harassed [him] and retaliated against [him] because of his mother." Streeter locked him in isolation because of his complaints about the medical department. He falsely charged plaintiff with possession of contraband and allowed another inmate to search plaintiff's cell. Streeter falsely accused plaintiff of being a snitch, "tried to set [him] up with a homemade shank or knife...", and stole some paperwork related to this civil action.

5. Officer Brooks threatened plaintiff with physical violence and "indirectly sprayed [him]" knowing that plaintiff has breathing problems. He then threatened to spray him intentionally when plaintiff requested assistance. He allowed another inmate to attempt to provoke plaintiff into a fight and told plaintiff that plaintiff takes too much medication.

6. Sgt. Montgomery locked plaintiff in disciplinary confinement for no reason and took plaintiff's legal work from him. Plaintiff has "two months worth of evidence missing." He took plaintiff's underwear and admitted to plaintiff that he is a racist. He, too, told other inmates that plaintiff is a snitch and threatened to spray him.

7. Officer Whitmore locked plaintiff up in isolation in retaliation for a grievance that plaintiff submitted. He made "sexual gestures" toward plaintiff. He claimed that he locked plaintiff up for "horseplay."

8. Assistant Warden Fife refused to provide a disciplinary report when plaintiff was placed in lock down.

9. Nurses Aid, Alice Hawkins, "taunted [him] when [he] went to sick call..." She made "ugly faces" and obscene gestures at plaintiff and wished his death as acts of retaliation.

10. Dr. Smith allowed Warden Harrison to influence his medical ethics by deliberately delaying plaintiff's hospitalization. He refused to hospitalize plaintiff because of the expense and failed to "followup on [plaintiff's] blood work..." He was rude and obscene and very unprofessional.

11. Sheriff Philley discriminated against plaintiff by sending him to MPJ which is not in the Fifth Judicial District Court's jurisdiction. He transferred him to avoid having to provide expensive medical care.

12. Louie Cleveland also "discriminated against [plaintiff] and denied [him] medical treatment" by sending him to MPJ.

Plaintiff did not specify the nature of the injunctive relief he sought.

### *Law and Analysis*

### *1. Screening*

When a prisoner sues an officer or employee of a governmental entity pursuant to Section 1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.§§ 1915 and 1915A, 42 U.S.C. §1992e.

A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

Nevertheless, in order to be afforded the benefits of this assumption a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not

simply rely on conclusory allegations. *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) (A court should begin its analysis by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); see also *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995).

A district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97. The law accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A complaint is frivolous if it lacks an arguable basis in law (i.e. it is based upon a undisputably meritless legal theory) or in fact (i.e. the facts are clearly baseless, a category including allegations that are fanciful, fantastic, or delusional). *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir.1995); *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); *Denton v. Herndandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

Plaintiff's pleadings are conclusory, allege few facts, and are fanciful, fantastic, and delusional. Nevertheless, plaintiff has, as is shown above, submitted numerous pleadings outlining the basic parameters of his complaint, and further amendment would serve no useful purpose.

*2. Medical Care Claims*

Plaintiff's original complaint asserted medical care claims. He alleged that Nurses Streeter and Hawkins failed to follow through with Dr. Smith's order for "blood work" and that Warden Harrison, Dr. Smith, and Nurse Streeter failed to treat his medical conditions – Hepatitis-C, a probable cyst on his arm or wrist, bloody stool, and a sinus infection. He prayed then only for prospective injunctive relief, namely, an order directing these defendants to provide proper medical care and treatment. He did not, however, allege what specific treatment or care was deemed appropriate.

Medical care claims asserted by convicted prisoners, like plaintiff, are analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment. In order to prevail on such claims, convicts must establish that the refusal or delay in providing medical care was "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Deliberate indifference in this context means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d 447, at 458-59. "[T]he failure to alleviate a significant risk that [the official] <u>should have perceived</u>, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d

8

1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999). Finally, and apropos to plaintiff's claims, the fact that a plaintiff disagrees with what medical care is appropriate does not state a claim of deliberate indifference to serious medical needs. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997).

Deliberate indifference under the Eighth Amendment requires the same showing of "subjective recklessness" used in criminal law. *Farmer v. Brennan*, 511 U.S. 825 (1994). Negligence, even gross negligence, or medical malpractice is not enough to meet the test. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1993) (citing *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir.1979)). An incorrect diagnosis does not suffice. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985). Rather, the plaintiff must show the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.*

Plaintiff has not alleged facts sufficient to establish deliberate indifference in this context. Plaintiff has not shown that the defendants were aware of facts from which an inference of substantial risk of serious harm could be drawn. It clearly appears that plaintiff subjectively disagrees with the quality of his treatment, and with the timing of it, and that is not enough – under the legal standard of deliberate indifference – to support his claim. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997); *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir.1995). Plaintiff complained that the facility's nurses failed to "follow through" with Dr. Smith's orders to provide "blood work." However, this suggests merely that the nurses were guilty of neglect and not deliberate indifference. Further, the failure to provide a diagnostic test – such as "blood work" – does not indicate a failure to treat and therefore does not establish deliberate indifference. Otherwise, plaintiff

faults the Warden and Dr. Smith for their failure to refer him to an orthopedic specialist for the cyst on his arm. However, he candidly admitted that the cyst was considered a minor injury by those who examined it. He complained of bloody stool, however, he did not allege the period of time this symptom was experienced, and, after his initial complaint, did not mention the malady. Finally, he faulted the nurse for failing to provide antibiotics for his sinus condition; however, once again, his pleadings fail to demonstrate anything more than a disagreement with the medical professionals with regard to the appropriate treatment regimen. Plaintiff does allege that the failure to provide appropriate care was due to the defendants' unwillingness to pay for his medical care. However, this fact is belied by his claim that the medical and corrections staff attempted on various occasions to have him examined for psychiatric problems, treatment and care which he refused.

In short, plaintiff's allegations are insufficient to state a claim for deliberate indifference. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997). The facts alleged herein, taken as true for the purposes of this Report, do not establish that the defendants were deliberately indifferent to a serious medical need. Plaintiff's claims are therefore frivolous and dismissal on that basis is recommended.

### 3. Parratt/Hudson Doctrine

Plaintiff also complained that he was erroneously charged for dental and medical care that he did not receive. Section 1983 proscribes conduct by any person who, under the color of state law, acts to deprive another person of any right privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. §1983. Thus, an initial inquiry in a lawsuit filed under §1983 is whether plaintiff has alleged that his constitutional rights have been violated. If no constitutional violation has been alleged, there is no cognizable claim under §1983.

The Due Process Clause of the Fourteenth Amendment provides "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Constitution, Amendment XIV. However, the jurisprudence makes it abundantly clear that a prisoner's claim for random deprivation of personal property is not cognizable under §1983.

In *Parratt v. Taylor*, 451 U.S. 527, 544, 107 S.Ct. 1908, 68 L.Ed.2d 420 (1981), a prisoner claimed that prison officials had negligently deprived him of his personal property without due process of law. The Supreme Court held that the prisoner was "deprived" of his property within the meaning of the Due Process Clause of the Fourteenth Amendment, but the Court ruled that the State's post-deprivation tort remedy provided all the process that was due. *Id.,* 451 U.S. at 536-37, 101 S.Ct. at 1913. The Due Process Clause does not embrace tort law concepts. *Id.* Although a prisoner may be afforded a remedy <u>under state tort law for deprivation of property</u>, the Fourteenth Amendment does not afford the prisoner a remedy. *Daniels v. Williams,* 474 U.S. 327, 335, 106 S.Ct. 662, 667. Even in instances where intentional deprivation occurs, as is the case herein, where an adequate state post-deprivation remedy is available, the Due Process Clause is not implicated. *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Davis v. Bayless*, 70 F.3d 367 (5th Cir. 1995); *Murphy v. Collins*, 26 F.3d 541 (5th Cir. 1994). This principle (known as the *Parratt/Hudson* doctrine) rests on the premise that because the state is unable to predict random and unauthorized conduct, pre-deprivation remedies are unfeasible. *Davis*, 70 F.3d at 375, citing, *Zinermon v. Burch*, 494 U.S. 113, 128-32, 110 S.Ct. 975, 985-86, 1098 L.Ed.2d 100 (1990) (distinguishing between random unauthorized conduct and a deprivation which results from predictable conduct authorized by a State).

In this case, plaintiff's allegations, accepted as true for purposes of this evaluation,

demonstrate that, at worst, an intentional, random, and unauthorized deprivation occurred when cash was erroneously seized from his prison account to pay for medical services which he did not receive. If adequate state law remedies are available, no further due process is required under the Constitution.

Louisiana law provides plaintiff the opportunity to seek redress for either the negligence of prison officials or an intentional tort committed by employees of the prison facility. See, La. Civil Code, Article 2315. This provision of state law which is the general tort provision of Louisiana's Civil Code provides all the process that is required, and thus, the Fourteenth Amendment is not implicated. *Charbonnet v. Lee*, 951 F.2d 638 (5th Cir.), *cert. denied*, 505 U.S. 1205, 112 S.Ct. 2994, 120 L.Ed.2d 871 (1992).

A liberal construction of plaintiff's complaint fails to support a constitutional violation; plaintiff's claim is clearly barred by the *Parratt/Hudson* doctrine. Unless plaintiff can show that the defendants violated his constitutional rights, plaintiff's claim is not a cognizable claim under §1983 and his claim to the contrary is frivolous.

*4. Access to Law Library*

Plaintiff implied that he has been denied access to the courts, or, that the prison officials have otherwise interfered with his ability to litigate this civil action. "It has long been recognized that prisoners generally enjoy the constitutional right of access to the court." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999). *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). The right of access to the court is not unlimited, however, and includes "only a reasonable opportunity to file non-frivolous legal claims challenging [the prisoners'] convictions or conditions of confinement." *Id.* (citing *Lewis*

*v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). Put another way, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d at 821; *Lewis v. Casey*, 518 U.S. at 351, 116 S.Ct. at 2179-81; *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996).

Plaintiff has not shown how his ability to prepare and transmit legal documents has in any way been inhibited. Indeed, as shown above, plaintiff has filed an original complaint and numerous and various motions and amended complaints with regard to the pending litigation.

Further, in order for plaintiff to state a claim that he was denied his constitutional right of access to the courts, he must "demonstrate[ ] that his position as a litigant was prejudiced by his denial of access to the court." *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir.1996) (*per curiam*) (citing *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993)). This requirement that a claimant show "actual injury" is "not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. The Supreme Court, discussing the "actual injury" requirement held that: "The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355.

Plaintiff has not demonstrated prejudice and therefore his access to court complaint also fails to state a claim for which relief may be granted.

*5. Retaliation*

Plaintiff also complains that he has been the victim of retaliation on the part of prison officials. To prevail on the claim for retaliation under Section 1983, a prisoner must prove (1) the exercise of a specific constitutional right; (2) the defendants' intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation, which, in this context means that, but for the retaliatory motive, the complained of incident would not have occurred. *McDonald v. Steward*, 132 F.3d 225, 2331 (5th Cir.1998). The prisoner must produce direct evidence of motivation, or, the more probable scenario, allege a chronology of events from which retaliation may be plausibly inferred. *Woods v. Smith*, 60 F.3d 1161 (5th Cir.1995). The plaintiff must allege more than just his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.1999). Here, plaintiff has alleged, in conclusory fashion, his personal belief that his transfer to MPJ and his subsequent confinements in lock down at that facility were acts of retaliation. Plaintiff has not provided sufficient facts to establish a chronology of events from which retaliation may be plausibly inferred. Further, plaintiff failed to establish causation as required by the jurisprudence. As noted above, plaintiff must allege facts to demonstrate that "but for" the exercise of some as yet unidentified constitutional right, the alleged retaliatory adverse acts would not have occurred.

Finally, even if the scenario suggested establishes retaliation, plaintiff has not shown that the alleged retaliatory acts had a chilling effect on him or were more than *de minimis*. *Compare Morris v. Powell*, 449 F.3d 682, 686 (5th Cir.2006)(A retaliatory adverse act must be more than *de minimis* to state a viable retaliation claim; the act must be "capable of deterring a person of ordinary firmness from further exercising his constitutional rights.")

*6. Verbal Threats*

Plaintiff also complains that various corrections officials verbally threatened or taunted him at various times during his incarceration. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Verbal threats or taunts, without more, do not support a claimed constitutional violation. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.1983). Simply put, allegations of verbal abuse by corrections officials simply do not give rise to a cause of action under § 1983. *Bender v. Brumley*, 1 F.3d 271, 274 n. 4 (5 Cir.1993), *Siglar v. Hightower*, 112 F.3d 191 (5 Cir.1997).

*7. Injunctive Relief and Temporary Restraining Order*

As previously noted, throughout the course of these proceedings, plaintiff has requested only prospective injunctive relief. In his original complaint he prayed for an order directing the defendants to "give [him] proper medical care and treatment..." He also sought a TRO "... to stop retaliation..." [Doc. 1] He sought another TRO to restrain Warden Harrison and his staff from retaliating and interfering with the instant litigation. [Doc. 8] Thereafter he sought a TRO to prohibit the defendants from engaging in any form of retaliation such as tampering with or withholding plaintiff's mail. [Doc. 14] Finally, in his latest pleadings, plaintiff sought another TRO to prohibit unspecified retaliatory acts by the defendants. [Docs. 16-17]

In order to be entitled to a temporary restraining order or a preliminary injunction, a litigant must demonstrate <u>each</u> of the following: (1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) the

threatened injury outweighs any damage that the injunction will cause to the adverse party; and (4) the injunction will not have an adverse effect on the public interest. *Women's Med. Ctr. of Northwest Houston v. Bell*, 248 F.3d 411, 418-20 (5th Cir.2001). "An injunction is an extraordinary remedy and should not issue except upon a clear showing of possible irreparable harm." *Lewis v. S.S. Baune*, 534 F.2d 1115, 1121 (5th Cir.1976).

Plaintiff is not entitled to the TROs he seeks because, as has been previously shown, plaintiff will not succeed on the merits of his various claims for relief; nor has he demonstrated that absent the issuance of an injunction or TRO he will suffer irreparable harm. Finally, plaintiff, in essence, asks the Court to substitute its judgment concerning plaintiff's incarceration for that of the health care and corrections officials who are presently charged with that obligation. It would be against the public interest to issue an injunction based solely on plaintiff's disagreement with the health care that is being provided or with the imposition of various sanctions based upon plaintiff's behavior as a prisoner. The Supreme Court has continuously cautioned federal courts from assuming "a greater role in decisions affecting prison administration." *Shaw v. Murphy*, 532 U.S. 223, 230, 121 S.Ct. 1475, 149 L.Ed.2d 420, (2001); accord *Washington v. Harper*, 494 U.S. 210, 223-24, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990); *Turner v. Safley,* 482 U.S. 78, 84-85, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *Bell v. Wolfish*, 441 U.S. 520, 547-48, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Jones v. N.C. Prisoners' Labor Union*, 433 U.S. 119, 125, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977). Plaintiff's allegations are insufficient to warrant interference into the defendants' administration of its prisons.

Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH**

**PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted;

**IT IS FURTHER RECOMMENDED** that plaintiff's Motions for Temporary Restraining Orders [Docs. 1, 8, 14, 16 and 17] be **DENIED.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, January 5, 2012.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE